IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MARTIN LYONS, M19540,                )
                                     )
                    Plaintiff,       )
                                     )
vs.                                  )
                                     )
ANGELA CRAIN,                        )
PHILLIPA DEVENNEY,                   )
CONNIE DOLCE,                        )          Case No. 26-cv-91-DWD
TARA CHADDERTON,                     )
TARA McCOY,                          )
JILIAN CRANE,                        )
ANTHONY WILLS,                       )
JANE DOES 1-6,                       )
MICHAEL MOLDENHAUER,                 )
ANGELA KENNER,                       )
                                     )
                    Defendants.[1]   )

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Martin Lyons, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Menard Correctional Center (Menard), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights.  (Docs. 1, 10).  Plaintiff alleges that the defendants have violated his rights by failing to provide treatment for multiple conditions.  Plaintiff's Amended Complaint[2] (Doc. 10) is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A.  Under Section

---

[1] The Clerk of Court is **DIRECTED** to **ADD** Angela Kenner as a Defendant in CM/ECF, because she was properly added to the listing of defendants in the Amended Complaint (Doc. 10 at 2).
[2] Plaintiff tendered his original complaint on January 27, 2026, and before the Court conducted an initial review or served anyone, he submitted an Amended Complaint on March 3, 2026.  A litigant is allowed to amend their complaint once as a matter of right without Court permission, so the Court treats the Amended Complaint as operative.

1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

### The Amended Complaint

Plaintiff arrived at Menard on October 22, 2022, and was still at Menard as of the filing of this suit. (Doc. 10 at 3). He alleges that in October and November of 2022 previous medications, prescriptions, and medical permits lapsed without review by any medical professional. Plaintiff claims that Menard (including Wills, Crain, Dolce, Chadderton, Devenney, McCoy, Moldenhauer, and Crane) has a policy, custom, or practice of allowing medical treatment to lapse for three weeks or longer at a time, and that this caused him significant harm. (*Id.* at 3). He further alleges that Defendants Wills, Crain, Dolce, McCoy, Chadderton, Devenney, and Kenner have a policy, practice, or custom of requiring inmates to submit kites on scraps of paper to be seen for medical attention, and then the scraps are often lost or ignored. (*Id.* at 3-4).

Plaintiff alleges that on December 14, 2022, his Cymbalta prescription expired and was not renewed until January of 2023. He suffered headaches, dizziness, and mood-related impairments and he alleges kites and a grievance were not timely answered on this issue. (Doc. 10 at 4). Additionally, he alleges that in January of 2023 his

gabapentin/Neurontin expired, causing vomiting, migraines, confusion and irritation. Again, he alleges kites and grievances were not timely addressed, and he went two weeks or more in withdrawal. (*Id.*). He attributes these issues to the policy described, and in addition to the defendants previously named, he alleges Jane Doe 6 (LPN nurse) participated in these issues. (*Id.*).

Plaintiff alleges that in May and June of 2023 he "constantly" missed gabapentin/Neurontin doses due to an "emergency meds only" policy that limited medication distribution to select inmates. (Doc. 10 at 4). He alleges that this violates the Equal Protection clause under a class of one theory. He missed medication on May 1, 2, June 4-6, June 30, and July 1-2, 2023. He attributes the missing doses to staffing shortages and overcrowding and faults Defendants Jane Doe 6 (LPN), Crain, Dolce, Chadderton, and McCoy. (*Id.* at 4). He specifically faults Chadderton for answering his cellmate's grievance about this issue but ignoring Plaintiff's grievance. (*Id.*).

Plaintiff takes gabapentin/Neurontin for neuropathy and carpal tunnel, and claims that without the medication he suffers extreme pain. (Doc. 10 at 5). He alleges he grieved the issue to Wills, Crain, Dolce, McCoy, and Chadderton, but they turned a blind eye or took more than two years to respond. (*Id.*). He alleges he missed additional doses on: August 4-5, August 19-20, September 3-4, September 15-17, and October 3, 2023. (*Id.*). Plaintiff also wrote an emergency grievance to Defendant Chadderton complaining about a "crush and float" method being used to deliver his medication that he claimed had ill-effects. (*Id.*)

Plaintiff alleges that his medication expired on December 17, 2023, and again he was without it between January 25, 2024, and February 11, 2024.  He had symptoms of withdrawal including migraines, nausea, sweating, vomiting, and more.  He alleges he notified Defendant Kenner via kite but she turned a blind eye or did not help.  (Doc. 10 at 5).  Plaintiff alleges he also pursued an emergency grievance about these outages, but Defendants Crain, Dolce, and McCoy did not respond or provide assistance.  (*Id.*).

Plaintiff alleges that in February and March of 2024, he had outside appointments cancelled without explanation, though he was eventually taken out in March without knowing why.  (Doc. 10 at 6).  Plaintiff received a nerve test and was seen by Defendant Jilian Crane on May 1, 2024.  He alleges that he tried to explain all of his medical issues to Crane, but she said she would not address all of his issues, and said he would need to "man up a little bit[." (*Id.*).  He claims at this appointment he realized his medical records were being fabricated.  He alleges Crane gave a brief shower permit and a body scrub but did not address any other prescriptions or permits.  He further alleges that Defendants Jane Doe 6 (LPN) or Kenner did not provide the things Crane ordered and ignored other kites.

On July 31, 2024, Plaintiff saw Dearmond,[3] whom he alleges also told him he was asking for too much.  Dearmond provided some referrals and medical permits, but she did not order "lotions, Robaxin, Tramadol, egg crate mattress, waist chain, ice, or medical showers," that Plaintiff believed he should have received based on previous treatment.

---

[3] Dearmond was not named as a defendant in the case caption, so the allegations about Dearmond were not analyzed for legal sufficiency.

(Doc. 10 at 6).  Plaintiff alleges he received permits for the things Dearmond ordered, but that on November 7, 2024, upon release from segregation the items Dearmond authorized were all gone from his property.  (*Id.* at 6-7).  He alleges he wrote kites and grievances about this issue, but Defendants Crain, Dolce, and McCoy disregarded his issues and responded to other inmates instead.  (*Id.*).

Plaintiff alleges that on January 9, 2026, his gabapentin/Neurontin expired again, and was not replaced until February 25, 2026.  He faults Defendants Crain, Dolce, McCoy, Devenney, Jane Doe 6 (LPN) and Kenner for allowing the expiration and ignoring related kites.  (Doc. 10 at 7).  During this lapse in mediation Plaintiff says he told Jane Does 1-4 on numerous occasions, or gave them kites, indicating his medication had lapsed and he was suffering physical withdrawal.  He claims they turned a blind eye to his plight, consistent with the Menard custom, policy, or practice.  (*Id.* at 7-8).  Plaintiff claims that while his medication had lapsed, Defendants Devenney, Moldenhauer, Crain, Dolce, McCoy, and Jane Doe 6 (LPN) were providing treatment to other inmates or answering their grievances/kites.  (*Id.* at 8).

He further alleges that on February 18, 2026, Defendant Moldenhauer only authorized a renewal of a 600mg dose, compared to his previous 1800mg.  (Doc. 10 at 7).  Moldenhauer refused medical permits and accommodations and allegedly said he did not believe Plaintiff's injuries or needs were genuine.  (*Id.* at 7).  Plaintiff alleges that on March 2, 2026, Moldenhauer provided him with a permit for a wrist stint, but he still lacks a knee brace, elbow brace, double cuff permit, low bunk permit, and shower permit.

(*Id.* at 9).  Plaintiff claims that the reduced dose of gabapentin/Neurontin is not adequate and has left him to suffer in pain.  (*Id.*).

As relief, Plaintiff seeks monetary compensation, injunctive relief directing Wills, Devenney, and Crain to resume adequate nerve medication, transfer to a prison that will treat his needs, and the creation of an electronic inmate complaint system to lodge medical requests.  (Doc. 10 at 10).

In support of the complaint Plaintiff submitted an affidavit from a fellow inmate attesting that in February of 2026 he witnessed Plaintiff experiencing withdrawal symptoms due to the lack of his nerve medication.  (Doc. 10 at 11).  He also submitted random excerpts of medical records, medical permits, and medication administration charts, the majority of which are significantly dated (pertaining to events that pre-date his time at Menard).  (Doc. 10 at 12-41).

Based on the allegations in the Amended Complaint, the Court will designate the following claims:

> **Claim 1:** **Claim against Defendants Wills, Crain, and Devenney, for maintaining a policy, custom or practice, of allowing medical prescriptions to lapse for 3 weeks or longer at a time without medical evaluation;**
>
> **Claim 2:** **Claim against Defendants Wills, Crain, Wills, Crain, and Devenney for maintaining a policy, custom, or practice requiring inmates to submit kites to seek medical care, but routinely not responding to kites;**
>
> **Claim 3:** **Claim against Defendants Wills, Crain, and Devenney for denying Plaintiff gabapentin/Neurontin due to the "emergency meds only" policy, custom, or practice, on numerous dates in May, June, July, August, September, and October of 2023;**

| Claim 4: | Eighth amendment deliberate indifference by Defendant Chadderton for failing to respond to Plaintiff's grievances about the emergency meds only issues; |
|---|---|
| Claim 5: | Eighth Amendment deliberate indifference clam against Defendant McCoy for turning a blind eye to Plaintiff's complaints about his medication being provided in an "open and float" method; |
| Claim 6: | Eighth Amendment deliberate indifference claim against Defendants Crain, Devenney, Dolce, Chadderton, McCoy, Kenner, Jane Does 1-4, and Jane Doe 6 (LPN) for their roles in allowing Plaintiff's gabapentin/Neurontin to lapse between January 25-February 11, 2024; and January 9-February 25, 2026; |
| Claim 7: | Eighth Amendment deliberate indifference claim against Defendant Moldenhauer for decreasing Plaintiff's gabapentin/Neurontin prescription from 1800mg to 600mg in February of 2026. |

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

### Preliminary Dismissals

Plaintiff named Jane Doe 5, a registered nurse, in his list of Defendants (Doc. 10 at 2), but he did not describe any actions by this individual in his factual narrative. Naming a party without describing their role is insufficient to state a claim under § 1983. Accordingly, Jane Doe 5 is dismissed without prejudice.

Plaintiff also named Jilian Crane as a defendant.  He alleges he saw Crane on May 1, 2024, and she provided some of the care he desired, but did not address his full panoply of concerns.  Plaintiff does not provide enough detail about the issues he raised to Crane, the seriousness of his various conditions, or her response, for the Court to plausibly infer that her conduct exhibited deliberate indifference at this single appointment.  Other than this single encounter, Plaintiff faults Crane in shotgun fashion for the alleged policies, practices, or customs that have harmed him at Menard, but naming a defendant in conclusory fashion is not sufficient for liability under § 1983.

Plaintiff discussed many desired accommodations or treatments in his complaint beyond gabapentin/Neurontin.  For example, he claims he needs knee, elbow, and wrist braces, an egg-crate foam mattress, and double-cuff permits.  He does not explain any of the underlying medical conditions that necessitate these various accommodations.  He also seems to complain about shower and hygiene issues requiring various permits, lotions, etc..  He faults the Defendants for maintaining policies, customs, or practices that allowed various accommodations and permits related to his many conditions to lapse. On the whole, Plaintiff's allegations concerning the vast majority of his medical issues or desired treatments/permits are too vague to state a claim.  The Eighth Amendment requires an inmate to establish a serious medical condition, and care that demonstrates a total disregard for his situation.  By only explaining the treatment/accommodations he sought, and not explaining the accompanying serious medical conditions, Plaintiff has failed to state a claim for the majority of issues mentioned in his complaint.  The Court

will not discuss any of Plaintiff's allegations concerning accommodations or treatment further beyond the gabapentin/Neurontin.

Finally, Plaintiff repeatedly alleges throughout the Complaint that he has an Equal Protection claim under a "class of one" theory because other inmates got care at times when he did not receive care. At screening, another court recently described the standard for class-of-one claims as follows:

> [A] "classic class-of-one claim is illustrated when a public official, 'with no conceivable basis for his action other than spite or some other improper motive...comes down hard on a hapless [individual].' " *Frederickson v. Landeros*, 943 F.3d 1054, 1060 (7th Cir. 2019) (quoting *Swanson v. City of Chetek*, 719 F.3d 780, 784 (7th Cir. 2013)). "Class-of-one claimants carry a heavy burden" and must, at the very least, show he was "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *FKFJ, Inc. v. Vill. of Worth*, 11 F.4th 574, 588 (7th Cir. 2021); *see also Walker v. Samuels*, 543 F. App'x 610, 611 (7th Cir. 2013) ("But even at the pleading stage, a plaintiff must anticipate the burden of eliminating any reasonably conceivable state of facts that could provide a rational basis for the government's actions [and] must provide a sufficiently plausible basis to overcome the applicable presumption of rationality.")
>
> [...]
>
> To the extent Noojin is attempting to assert class-of-one equal protection claims related to the denial or confiscation of his specific items—*e.g.,* a blanket, his cup and spork, personal items, and his religious necklaces— such claims fail because he hasn't plausibly alleged any of the named defendants intentionally denied him the items and did so without any conceivable rational basis. *See Lee v. Stanford*, No. 24-2417, 2025 WL 1904114, at *2–3 (7th Cir. July 10, 2025) (affirming dismissal of equal protection class-of-one claim because "[a]lthough [plaintiff] peppers throughout the complaint that [defendant] acted 'intentionally,' 'arbitrarily,' and with 'no rational basis, these bare legal conclusions are irrelevant to our assessment"); *see also Bissessur*, 581 F.3d at 602 (claim must be plausible on its face and complaint must provide adequate factual content).

*Noojin v. English*, 2026 WL 194114 at * 12-13 (N.D. Ind. Jan. 26, 2026).

In the present case, Plaintiff mentions the class-of-one theory throughout his complaint, but he does not say anything that suggests the differential treatment was intentional, nor does he suggest there was no rational basis for the differential treatment. As such, he has failed to adequately plead a class-of-one claim and all such mentions in the complaint are dismissed as insufficient.

## Analysis

Claims 1-3 allege that numerous defendants were responsible for three policies, customs, or practices that contributed to Plaintiff's missed doses of gabapentin/Neurontin. Specifically, Plaintiff alleges that there was a policy, custom, or practice of allowing prescriptions to lapse for three weeks or more at a time, second he alleges sometimes an "emergency meds only" protocol was followed that allowed some inmates to get their medications and not others, and, third he alleged that inmates are required to submit kite slips for all medical issues but kites are often ignored or lost. Though Plaintiff names Defendants Wills, Crain, Dolce, McCoy, Chadderton, Devenney, Kenner, and Jane Doe 6 (LPN) in association with the alleged policies, he only seeks injunctive relief from Wills, Crain, and Devenney.

Generally, when an inmate presents a claim about a harmful policy, custom, or practice in the context of prison medical care, he is often pursuing a claim allowed under *Monell* against the prison's corporate medical contractor. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978); *see also Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014) (Wexford is a private corporation that cannot be held

liable under § 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself).  *Monell* liability is also often applied to allegations about policies maintained by units of local government.  *See e.g., Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010) ("A local governing body may be liable for monetary damages under § 1983 if the unconstitutional act complained of is caused by: (1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority.").

It is much less common for an inmate to seek to pursue a claim for a harmful policy, custom, or practice against the Illinois Department of Corrections, and such a theory is strained.  IDOC itself is not a "person" for purposes of § 1983 liability.  *Thomas v. Ill.*, 697 F.3d 612, 613 (7th Cir. 2012) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989)).  In this case, Plaintiff does not name IDOC as a defendant.  Instead, he has named various prison employees, including the Warden (Wills), the healthcare administrator (Crain), and the medical director (Devenney) in their official capacities for injunctive relief.  (Doc. 10 at 2).  Though state employees sued in their official capacity are not subject to monetary damages, Plaintiff's desire for injunctive relief may warrant a different outcome.

The Eleventh Amendment generally bars private suits in federal court against a state for monetary damages. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989); *MCI Telecomm. Corp. v. Ill. Bell Tel. Co.*, 222 F.3d 323, 336 (7th Cir. 2000).  That immunity extends to state agencies as well and, subject to the *Ex Parte Young* doctrine, to state employees

acting in their official capacities. *MCI Telecomm.*, 222 F.3d at 336–37 (discussing *Ex Parte Young*, 209 U.S. 123 (1908)). Under the exception outlined in *Ex Parte Young*, the Eleventh Amendment does not bar a lawsuit against an individual state official in their official capacity for an ongoing violation of federal law if the remedy sought is prospective injunctive or declaratory relief. *MCI Telecomm.*, 222 F.3d at 345 ("[A] private party may sue individual state officials in federal court to obtain prospective relief for an ongoing violation of federal law."). However, merely seeking injunctive relief for an ongoing issue against an official is not automatically enough to sustain a claim. An inmate must also establish that there is an actual connection between the harmful policy, practice, or custom that he has identified, and the actions of the official from whom he seeks injunctive relief. *See Eason v. Pritzker*, 2020 WL 6781794 at * 8 (N.D. Ill. Nov. 18, 2020) ("Courts require a link between the 'official's duties and powers under state law" and the alleged unconstitutional act to ensure that the official is not merely a representative of the state."). In *Eason* the court concluded that an inmate could not maintain a policy claim against the Governor of Illinois because merely sitting atop the state executive branch does not establish liability, and he did not demonstrate any meaningful connection between the governor and the prison's policies for hearing impaired inmates. *Id.* at * 8-9.

Here, Plaintiff faults Defendants Wills, Devenney, and Crain for the three policies that he alleges caused him to miss his medications. He does not clearly describe the individual roles that these three had with the three policies he describes, but he alleges that he repeatedly notified them via kites, grievances, and emergency grievances about the issues he was experiencing accessing his medications. At this juncture, the Court

cannot fairly assess if these three had a role in the policies, customs, or practices described, or if policies, customs, or practices even existed at all. However, the pleadings must be interpreted broadly in Plaintiff's favor at this very early juncture, and viewing things broadly, he has at least said each of these three was in a supervisory role, and each of the three was notified of his explicit problems. As employees local to Plaintiff's prison, there is a reasonable likelihood they had control over the issues Plaintiff describes, if in fact Plaintiff's allegations about the policies and his own situation can ultimately be substantiated.

Additionally, Plaintiff seeks injunctive relief specific to the three issues he has described in the form of stable access to his nerve medication. He also seeks the implementation of an electronic medical services request form to fix problems he has experienced with the written kite system. Based on Plaintiff's allegations, and his narrow demand for injunctive relief, he may proceed on Claims 1-3 against Defendants Wills, Devenney, and Crain in their official capacity for purposes of injunctive relief.

Claims 4-7 complain about discrete issues with Plaintiff's receipt of medication and his attempts to grieve or complain about missed doses. Not every missed dose of medication in prison is enough to state a constitutional claim. *See e.g., Hamilton v. Gavin*, 2023 WL 2161663, at *6-7 (N.D. Ill. Feb. 22, 2023) (collecting cases concerning missed doses of medication, generally one dose is not enough to state a claim). But here Plaintiff describes a rather lengthy pattern of missed doses, so the Court views his situation as passing the threshold for a possible constitutional claim.

An Eighth Amendment claim arising from the denial of medical care consists of an objective and a subjective component. *Berry v. Peterman*, 604 F.3d 435, 439–40 (7th Cir. 2010). A plaintiff must show that he suffered from a serious medical condition (i.e., an objective standard) and also show that each defendant responded with deliberate indifference (i.e., a subjective standard). *Id.* To satisfy the subjective component, a prisoner must demonstrate that an official knew of and disregarded an excessive risk to inmate health. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Neither medical malpractice, nor mere disagreement with a doctor's medical judgment will amount to deliberate indifference. *Id.* Additionally, an inmate is not entitled to demand specific care, and a medical professional may choose from a range of acceptable courses of care. *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019).

Plaintiff's allegations straddle the line between demanding care versus receiving allegedly inadequate or inappropriate care. At this preliminary juncture, the Court construes his allegations broadly and accepts his assertion that the missed doses, reduced dose, and "crush and float" method may have negatively impacted Plaintiff. He describes numerous symptoms of withdrawal and also alleges that the "crush and float" method caused side effects. He claims that without stable access to his medication, he suffered pain, and withdrawal symptoms including vomiting and headaches. He also alleges that some of the defendants named in Claims 4-7, such as Defendant Kenner, received numerous detailed grievances about the problems he had with missed medications, and yet they turned a blind eye and offered no assistance. Claims 4-7 may

proceed against the individual defendants for their alleged roles in Plaintiff's medication issues.

### Disposition

**IT IS HEREBY ORDERED THAT Claims 1-3** of the Complaint (Doc. 1) survive against Defendants Wills, Devenney, and Crain in their official capacities for injunctive relief, and **Claims 4-7** may proceed against Defendants Crain, Devenney, Dolce, Chadderton, McCoy, Kenner, Jane Does 1-4, Jane Doe 6 (LPN), and Michael Moldenhauer.  By contrast, Plaintiff has failed to state a claim against Defendant Wills in his individual capacity, against Defendant Jilian Crane, and against Jane Doe 5.  The Clerk of Court shall **TERMINATE** Defendants Jilian Crane and Jane Doe 5.

The Clerk of Court shall **ADD** Angela Kenner as a defendant consistent with footnote 1.

The Clerk shall **ADD** the Warden of Menard in official capacity for injunctive relief and to help identify Jane Does 1-4 and 6.  **Plaintiff shall have 21 days to file a notice with descriptive information about Jane Does 1-4 and 6.  He shall include physical appearance, dates when he interacted with these defendants, nicknames, and any other information he possesses.**  Failure to file a notice may result in the dismissal of Jane Does 1-4 and 6.  Once Plaintiff has filed his Notice, the Court shall set a deadline for the Warden to respond.

The Clerk of Court is **DIRECTED** to prepare for Defendants Angela Crain, Phillipa Devenney, Connie Dolce, Tara Chadderton, Tara McCoy, Angela Kenner, Anthony Wills, Michael Moldenhauer, and the Warden of Menard (official capacity): (1) Form 5 (Notice

of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 10), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). Pursuant to Local Rule 8.2, Defendants need only respond to the issues stated in this Merits Review Order.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed in forma pauperis was granted. See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than 14 days after a change of address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute.  FED. R. CIV. P. 41(b).

The Clerk of Court is **DIRECTED** to enter the standard HIPAA Order in this case because it will involve the exchange of medical records.

Plaintiff's Motion for Status (Doc. 12) is **GRANTED** by the issuance of this Order.

**IT IS SO ORDERED.**

Dated: April 17, 2026

/s/ *David W. Dugan*

_____

DAVID W. DUGAN
United States District Judge

**NOTICE TO PLAINTIFF**

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.